1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  MARIA REYES,                          ) Case No.: 1:10-cv-02094 JLT
                                          )
12               Plaintiff,               ) ORDER DIRECTING THE ENTRY OF
                                          ) JUDGMENT IN FAVOR OF DEFENDANT
13       v.                               ) MICHAEL J. ASTRUE, COMMISSIONER OF
                                          ) SOCIAL SECURITY, AND AGAINST
14  MICHAEL J. ASTRUE,                    ) PLAINTIFF MARIA REYES
    Commissioner of Social Security,      )
15                                        )
                 Defendant.               )
16  _____  )

17          Maria Reyes ("Plaintiff") asserts she is entitled to supplemental security income under Title

18  XVI of the Social Security Act.  Plaintiff argues the administrative law judge ("ALJ") erred in

19  finding her physical impairment did not meet or medically equal a Listing, and failed to set forth

20  clear and convincing reasons for discounting the credibility of her subjective complaints.  Therefore,

21  Plaintiff seeks judicial review of the administrative decision denying her claim for benefits.  For the

22  reasons set forth below, the administrative decision is **AFFIRMED**..

23                         **PROCEDURAL HISTORY**[1]

24          Plaintiff filed an application for supplemental security income on May 29, 2007, alleging

25  disability beginning July 1, 2005.  AR at 46-55.  The Social Security Administration denied her

26  claims initially on August 31, 2007, and upon reconsideration on November 21, 2008.  *Id.* at 56-65.

27  _____

28          [1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1   After requesting a hearing, Plaintiff testified before an ALJ on May 21, 2010. *Id.* at 15. The ALJ

2   determined Plaintiff was not disabled under the Social Security Act, and issued an order denying

3   benefits on June 9, 2010. AR at 15-21. The Appeals Council of Social Security denied review of

4   the ALJ's decision on September 10, 2010. *Id.* at 1-3. Therefore, the ALJ's determination became

5   the decision of the Commissioner of Social Security ("Commissioner").

6                                    **STANDARD OF REVIEW**

7           District courts have a limited scope of judicial review for disability claims after a decision by

8   the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact,

9   such as whether a claimant was disabled, the Court must determine whether the Commissioner's

10  decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The

11  ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal

12  standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y*

13  *of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

14          Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a

15  reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

16  389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938). The record as a whole

17  must be considered, as "[t]he court must consider both evidence that supports and evidence that

18  detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

19                                   **DISABILITY BENEFITS**

20          To qualify for supplemental security income under Title XVI of the Social Security Act,

21  Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically

22  determinable physical or mental impairment that has lasted or can be expected to last for a

23  continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be

24  considered to have a disability only if:

25          physical or mental impairment or impairments are of such severity that he is not only
            unable to do his previous work, but cannot, considering his age, education, and work
26          experience, engage in any other kind of substantial gainful work which exists in the
            national economy, regardless of whether such work exists in the immediate area in which
27          he lives, or whether a specific job vacancy exists for him, or whether he would be hired
            if he applied for work.

28

2

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §416.920(a)-(f) (2010).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  In making these determinations, the ALJ must consider objective medical evidence and opinion (hearing) testimony.  20 C.F.R. §§ 416.927, 416.929.

A.   Relevant Medical Evidence

*Treatment notes*

In May 2005, Plaintiff reported to Dr. Pedro DeLaRosa that she had pain in her joints and low back, but images of her lumbosacral and cervical spines were normal and unremarkable.  AR at 256, 286-87.  In June 2005, Plaintiff reported feeling pain in her back and left hip to Dr. Ramy Elias.  AR at 242.  Plaintiff reported she had this pain on and off for 18 years, which was "4-5" on a scale of 10.  *Id.* at 242, 281. X-rays of Plaintiff's pelvis and left hip were reviewed by Dr. Seung, who determined:

> There is mild narrowing of the left hip joint and osteophyte formation consistent with osteoarthritis.  No fracture is demonstrated.  Similar findings are seen in the right hip.
>
> There is marked abnormality of the symphysis pubis.  The articulating portions of the pubis appear ill-defined, abnormally sclerotic.  In addition, the right pubis just adjacent to the pubic symphysis shows an area of erosion.  Findings most likely indicate osteitis pubis.  Possibility of superimposed infection is not excluded.

*Id.* at 236.  An MRI taken on July 21, 2005 of Plaintiff's hips showed no abnormalities in her right hip, but there were "high grade arthritic changes in the left hip."  *Id.* at 276.  In August 2005, an

evaluation of her lumbar spine showed a mild bulge at L4-5 and minimal degenerative changes.  *Id.* at 233, 301.

In August 2006, Plaintiff continued to complain of low back and hip pain.  AR at 299.  On August 23, 2006, Dr. Gottlieb compared an x-ray of Plaintiff's pelvis to x-rays taken on June 29, 2005 and found: "There is sclerosis of the pubic symphysis with focal erosions consistent with osteitis pubis essentially unchanged from previous exam.  There is narrowing of the left hip joint with marginal joint spurring due to degenerative arthritis.  There are no factures or dislocations."  *Id.* at 230.

Plaintiff received treatment from Darin M. Camarena Health Centers beginning January 21, 2009.  AR at 361.  At her initial appointment, Physician's assistant Frank Chimienti noted Plaintiff had "a long history of rheumatoid arthritis with severe left lower extremity arthritis . . . She was supposed to have a left hip replacement a few years ago, but was unable due to insurance issues."  *Id.* Plaintiff reported she was "fairly well maintained with the anti-inflammatory medications," but reported "having worsening left hip pain over the last couple of years."  *Id.*  Mr. Chimienti observed Plaintiff "walk[ed] with use of a cane" and had "very prominent hip stiffness on the left side." Likewise, on February 25, 2009, Mr. Chimienti noted Plaintiff had "very limited movement of the left hip" and tenderness in her left hip and knee.  *Id.* at 358.

Dr. Todd Spencer determined x-rays of Plaintiff's lumbar spine showed "mild multilevel degenerative changes including degenerative disc disease, endplate sclerosis, disc space narrowing and facet arthropathy" on March 12, 2009.  AR at 344.  In addition, Dr. Spencer reviewed images of Plaintiff's pelvis, left hip, and left knee.  *Id.* at 345-46.  Dr. Spencer found "[m]oderately severe degenerative joint disease in the left hip joint" and "mild degenerative joint disease" in her right hip and left knee.  *Id.*

On August 14, 2009, Plaintiff had operation for stress urine incontinence performed by Dr. Theodore Nassar.  AR at 338.

Madera Community Hospital referred Plaintiff to Dr. Yasmeen Khalid for treatment of her rheumatoid arthritis.  AR at 363-64.  On October 30, 2009, Dr. Khalid observed Plaintiff exhibited "mild symptoms," but limped and walked with a cane.  *Id.* at 363.  Dr. Khalid agreed Plaintiff most

likely had rheumatoid arthritis, but opined it was "not very active." *Id.* In addition, Dr. Khalid believed Plaintiff's "complaints [were] out of proportion to exam." *Id.*

On December 11, 2009, Plaintiff reported she felt better, her joint pain and fatigue had decreased, and she was more active and functional. *Id.* at 376. Dr. Khalid concluded Plaintiff's rheumatoid arthritis was improving. *Id.*

*Physician's opinions*

Dr. Concepcion Enriquez performed an internal medicine consultation on July 20, 2007. AR at 307-11. Plaintiff reported a history of rheumatoid arthritis, feeling tired easily, difficulty walking, stiffness in her joints, and "pain on her lower extremities especially her hips and knees." *Id.* at 307. Plaintiff did not have a suggested surgery on her left knee "because she still has a small child to take care of." *Id.* During the physical examination, Plaintiff was "able to generate 50 pounds of force using the right hand, and 60 pounds of force using the left hand" with the Jamar Hand Dynamometer. *Id.* at 308. Dr. Enriquez found the range of motion was "grossly within normal limits" in Plaintiff's cervical spine, shoulders, elbows, and wrists. *Id.* at 309. Dr. Enriquez determined Plaintiff had "decreased range of motion of the left hip at 80/90 degrees on forward flexion [and] 30/50 degrees external and internal rotation." *Id.* Further, Plaintiff had "decreased range of motion on the left knee at 130/150 degrees on flexion." *Id.* Dr. Enriquez observed Plaintiff had "a moderate limp on the left and ha[d] some difficulty walking without assistance." *Id.* at 310. Dr. Lawrence Resnick interpreted x-rays taken of Plaintiff's left hip and left knee taken at Dr. Enriquez's request, and found Plaintiff had moderate degenerative disease in her left hip, and a "normal left knee." *Id.* at 311. Dr. Enriquez offered the following functional assessment: "The patient can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. The patient can stand and/or walk with normal limits for two hours in an eight-hour workday. The patient can sit with normal limits for six hours in an eight-hour day." *Id.* at 310.

Dr. P.A. Talcherkar completed a physical residual functional capacity on August 10, 2007. AR at 312-17. Dr. Talcherkar opined Plaintiff had the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently. *Id.* at 313. Dr. Talcherkar believed Plaintiff could sit at least two hours in an eight-hour day and about six hours in an eight-hour day. *Id.* Further, Dr. Talcherkar

noted Plaintiff had a history of fatigue and severe pain in her hips and knees. *Id.* Dr. Talcherkar

noted also Plaintiff had a decreased range of motion in her left knee and hip, atrophy of the left lower

extremity, and difficulty walking without assistance. *Id.* at 314. Given these impairments, Dr.

Talcherkar opined Plaintiff was limited in her lower extremities with her ability to push and/or pull,

including operation of foot controls. *Id.* at 313. Dr. Talcherkar determined Plaintiff could never

climb ladders, ropes, or scaffolds; but could occasionally climb ramps or stairs, stoop, kneel, crouch,

and crawl. *Id.* at 315. In addition, Dr. Talcherkar believed Plaintiff had to avoid "even moderate

exposure" to hazards such as machinery and heights. *Id.* at 316. Dr. Talcherkar found no further

postural, manipulative, visual, communicative, or environmental limitations. *Id.* at 314-316.

Dr. DeLaRosa completed forms regarding Plaintiff's physical and mental capacity on

September 24, 2008. AR at 333-36. Dr. DeLaRosa opined Plaintiff's condition prevented her from

working, beginning May 10, 2005. *Id.* at 333. According to Dr. DeLaRosa, Plaintiff could never lift

and carry 10 pounds, climb, balance, stoop, kneel, crouch, crawl, or reach blow her knees. *Id.* at 334.

Dr. DeLaRosa opined Plaintiff could stand or walk "0-2" hours at one time and "0-2" hours total

during the day. *Id.* at 335. Also, he believed Plaintiff could sit "0-2" hours at one time, for a total of

"2-4" hours in a day. *Id.* Dr. DeLaRosa noted Plaintiff "reports that pain radiates to both lower

extremities down to the knees [and] feet," and was therefore restricted from repetitive movements

such as operating a foot control. *Id.* Dr. DeLaRosa observed Plaintiff suffered from depression as a

"result[] from her physical injuries," and the depression and pain resulted in a "diminished ability to

concentrate 2 [hours]." Dr. DeLaRosa believed Plaintiff's remained "adaptable" and had "adequate"

social functioning "despite her depression." *Id.*

Dr. Warren David Yu conducted an orthopedic evaluation on October 26, 2008. AR at 320-

23. Dr. Yu noted Plaintiff had "a workup in 2005 that diagnosed arthritis." *Id.* at 320. In addition,

Plaintiff reported she began using crutches two years before the examination and was able to walk

"about one-half block with crutches." *Id.* Dr. Yu observed Plaintiff had "a Trendelenburg lurch to

the left side." *Id.* at 321. He determined Plaintiff had a normal range of motion in her cervical spin,

thoracolumbar spine, shoulders, elbows, wrists, hands, and ankles. *Id.* Plaintiff exhibited

"significant guarding" in her left hip and "mild irritability" in her right hip. *Id.* at 321-22. An x-ray

6

of Plaintiff's left hip showed "early spurring and medial compartment narrowing." *Id.* at 323.

Further, Dr. Yu found Plaintiff had "early degenerative changes in the medial compartment" in her

left knee. *Id.*  "Based on [the] examination," Dr. Yu offered the following functional assessment:

> The patient should be able to sit for up to six hours in an eight-hour day.  Standing and
> walking should be limited to two hours in an eight-hour day.  She should occasionally
> be allowed to pick up 20 pounds and frequently 10 pounds.  The patient should have free
> use of the upper extremities.  She should be limited with regard to squatting, stooping,
> kneeling, crawling, climbing, bending or lifting.

*Id.*  In addition, Dr. Yu opined Plaintiff "should be able to walk short distances about the house

without an assistive device," but "[l]onger distances will require the use of a cane or crutches." *Id.*

Dr. Spitzer completed a physical residual functional capacity assessment on November 20,

2008. AR at 325-29. Dr. Spitzer noted Plaintiff had degenerative disc disease in her left hip and left

knee. *Id.* at 324. Dr. Spitzer opined Plaintiff could lift and/or carry 20 pounds occasionally and 10

pounds frequently; sit about six hours in an eight-hour day; and stand or walk two hours in an eight-

hour day. *Id.* at 325. Dr. Spitzer opined Plaintiff required a hand-held assistive device for

ambulation, but specified "use of [a] cane only for long distance (> 6 blocks)." *Id.*  In addition, Dr.

Spitzer concluded Plaintiff was limited in her ability to push and pull with foot controls in her left

leg. *Id.*  Plaintiff had the ability to occasionally climb, ramps, stairs, ladders, ropes, and scaffolds.

*Id.* at 325. Also, Plaintiff could occasionally balance, stoop, kneel, crouch, and crawl. *Id.*

According to Dr. Spitzer, Plaintiff should "[a]void uneven terrains" and "even moderate exposure"

to hazards such as machinery and heights. *Id.* at 325-26. Dr. Spitzer found no further postural,

manipulative, visual, communicative, or environmental limitations. *Id.* at 325-27. Dr. Spitzer

believed Plaintiff was "[p]artially credible." Further, Dr. Spitzer opined, "the limitations suggested

by [Dr. Yu] are consistent with the objective evidence, appropriate, and credible." *Id.* at 329.

Therefore, Dr. Spitzer adopted the functional capacity assessment offered by Dr. Yu. *Id.*

Dr. Kenneth Bernstein offered a medical source statement on January 7, 2010. AR at 373-74,

379-80. Dr. Bernstein noted he had treated Plaintiff for one year and a half. *Id.* at 373, 379. He

opined Plaintiff did not have psychological problems, but her physical impairments were

"permanent." *Id.* at 379-80. Specifically, Dr. Bernstein opined Plaintiff had a "normal" ability to

relate and interact with supervisors and co-workers; understand, remember, and carry out simple or

complex job instructions; deal with the public; maintain attention and concentration for two-hour increments; withstand the stress associated with work; and handle funds. *Id.* 373-74, 379-80.   In addition, Dr. Bernstein indicated he treated Plaintiff's physical problems with anti-inflammatory medication, and indicated a hip replacement was possible in the future. *Id.* at 374, 380.

B.   Hearing Testimony

*Plaintiff's Testimony*

Plaintiff testified with the assistance of an interpreter at the hearing before the ALJ on May 21, 2010. AR at 24.  Plaintiff reported she was divorced and had four children; "the two little ones" lived in her home. *Id.* at 27.  Plaintiff reported that the highest grade she completed in school was the sixth grade, in Mexico. *Id*.  Plaintiff said she last worked in 2003 as a full-time door knob assembler. *Id.* at 28-29.  She reported this job did not require her to "lift anything heavy," because anything necessary for assembly of the door knobs was brought to her. *Id.* at 29.  Plaintiff stated her job was "mostly assembling," but she sometimes packaged the door knobs. *Id.*

According to Plaintiff, pain in her hip and knee prevented her from working.  AR at 30.  As a result, Plaintiff believed she was unable to perform any job that required work eight hours a day, five days a week, because she "cannot be seated for too long or stand for too long." *Id*.  She reported pain in her back, and that her arms, shoulders, and hip "become swollen." *Id.* at 31.  Also, Plaintiff said she needed to urinate frequently, but had a vaginal reconstruction which improved her condition so that she had to urinate about six times a day. *Id.* at 31, 37.

Plaintiff reported that she felt pain in her lower back "[f]our out of five days a week."  AR at 31.  Plaintiff stated her medication does not make her back pain go away, but sometimes caused dizziness or sleepiness. *Id.* at 32. Plaintiff estimated that she had to lie down three times a week, for 20 minutes to an hour each time. *Id.*  Plaintiff said, "I lie down on the floor; I bend my legs and I try to straighten my neck to alleviate the pain." *Id.* at 32.

Plaintiff stated that she had pain in her shoulders about five days a week, and in her hips "all the time."  AR at 32-23.  Plaintiff said she could alleviate the pain if she stood "for a little while" and moved her legs backward. *Id.* at 32.  She said the medication "sometimes works," but at times one pill was not enough, and she took two or three. *Id.* at 33.  Plaintiff reported her left knee hurt, but

was "okay" unless she touched anything. *Id.* at 34.  Further, Plaintiff said her shoulder was "fine," but sometimes the pain started when she awoke. *Id.*  She did not believe physical therapy relieved her pain and said, "It just makes me numb." *Id.*

Plaintiff believed the most she could lift was a gallon of milk, and said she was unable to stretch her arms to grab or pull something heavy.  AR at 35-36.  Plaintiff estimated that she could sit "[a]bout half an hour to an hour" and stand "about 10 or 15 minutes."  AR at 34-35.  Plaintiff believed she could walk about six feet before she needed a break. *Id.* at 35.  According to Plaintiff, though she asked for a cane from the doctor, she "was never given one" and no prescription for a cane was written. *Id.*  Plaintiff testified, "When I got [a cane] they said that I was fine." *Id.*  Plaintiff reported she used the cane daily, but sometimes used crutches. *Id.* at 35.  Plaintiff stated she was unable to pick up items from the floor, kneel, or crawl. *Id.* at 36.

Plaintiff said she had a driver's license and drove every day "from the house to school and also to the grocery store."  AR at 28.  She stated she cooked, shopped for groceries, and cleaned. *Id.* at 38.  However, Plaintiff said she was "unable to sweep, mop, or bend" when she had "a lot of trouble" with her leg and hip. *Id.* at 39.  Plaintiff reported she had the ability to bathe herself, though she was unable to scrub her left leg because she could not bend. *Id.* Further, Plaintiff testified that she required assistance to dress. *Id.*

*Vocational Expert's Testimony*

Vocational Expert ("VE") Thomas Dachelet testified after Plaintiff at the hearing.  Based upon Plaintiff's testimony, the VE identified the past work in door knob assembly as "Small Parts II Assembler."  AR at 41.  This work was "light and unskilled, SVP two." *Id.*  The ALJ then asked the VE to assume a worker of the same age, education, and vocational experience of Plaintiff, and consider various physical limitations. *Id.*

First, the VE considered an individual with the ability to perform work at the sedentary level, and who could occasionally push or pull foot controls with her left leg.  AR at 41.  In addition, she could "occasionally balance, stoop, kneel, crouch, crawl and climb ramps or stairs." *Id.*  The individual was required to "avoid even moderate exposures to hazards," and could never climb ladders, ropes or scaffolds. *Id.*  The VE opined this person was unable to perform Plaintiff's past

1   relevant work, but there were other jobs available in the economy.  *Id.*  When considering the

2   necessity to "use a cane or another assistive device to walk more than six blocks at a time," the VE

3   responded, "We are already at sedentary; I don't think we can go any lower."  *Id.* at 42.  If the worker

4   could continue to work while using the assistive device, jobs would remain available.  *Id.* at 43.

5       Second, the VE considered an individual who had the ability to "lift and carry ten pounds

6   occasionally and less than ten pounds frequently."  AR at 42.  Also, the person could "stand and

7   walk about two hours in an eight hour day, and sit four hours in an eight hour day."  *Id.*  The VE

8   concluded no jobs were available with these limitations.  *Id.*

9   C.   The ALJ's Findings

10      Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial

11  gainful activity since the application date of May 29, 2007.  AR at 17.  Second, the ALJ found

12  Plaintiff had the following severe impairments: "degenerative joint disease of the left hip and left

13  knee arthritis").  *Id.* At step three, the ALJ concluded these impairments did not meet or medically

14  equal Listings 1.02 or 1.03.  *Id.*  The ALJ determined Plaintiff had the following residual functional

15  capacity ("RFC"):

16      [Plaintiff] has the residual functional capacity to lift and carry 10 pounds occasionally,
        and less than 10 pounds frequently; stand or walk 2 hours in an 8-hour work day; sit 6
17      hours in an 8-hour work day; and occasionally balance, stoop, knee, crouch, crawl, climb
        ramps and stairs, and push or pull foot controls with her left lower extremity.  But she
18      can never climb ladders, ropes, and scaffolds; must avoid even moderate exposure to
        hazards; and must use an assistive device to walk more than 6 blocks.
19

20  *Id.*  With this RFC, the ALJ found Plaintiff was capable of performing work in the national

21  economy.  *Id.* at 20.  Therefore, the ALJ concluded Plaintiff was not disabled as defined by the

22  Social Security Act.  *Id.* at 21.

23                                    **DISCUSSION AND ANALYSIS**

24  A.   The ALJ's determination that Plaintiff's impairments do not meet or medically equal a Listing is

25  supported by substantial evidence.

26      The Listings set forth by the Commissioner "define impairments that would prevent an adult,

27  regardless of his age, education, or work experience, from performing *any* gainful activity, not just

28  'substantial gainful activity.'"  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citation omitted,

emphasis in original).  At step three of the sequential evaluation, the claimant bears the burden of demonstrating that her impairments equal a Listing.  *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n. 5 (1987). 20 C.F.R. §§ 404.1520(d), 416.920(d).  "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* at 141; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  The ALJ determined Plaintiff's impairments did not "meet[] or medically equal" Listings 1.02 and 1.03.  AR at 17.  Plaintiff argues the "evidence of record demonstrates that [she] has an impairment that meets or at least equals 20 C.F.R. Part 404, Subpt. P., App.1, Listing 1.02A."  (Doc. 13 at 6).

Listing 1.02 falls under the category of musculoskeletal impairments and requires a claimant to show a major dysfunction of a joint, "[c]haracterized by gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s) and findings on an appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)."  20 C.F.R. Part 404, Subpt. P., App.1, Listing 1.02(A).  "Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle)" is required, which "result[s] in inability to ambulate effectively."  *Id.*  The Listings define "inability to ambulate effectively" as follows:

> [A]n extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. …

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Part 404, Subpt. P., App.1, Listing 1.00(B)(2)(b). The Supreme Court explained, "For a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not

qualify." *Sullivan v. Zebley*, 493 U.S. at 530 (emphasis in original).  Therefore, to meet her burden

at step three, Plaintiff must demonstrate she meets the above requirements.  In the alternative,

Plaintiff may show her condition "equals" Listing 1.02 with "symptoms, signs and laboratory

findings at least equal in severity and duration to the characteristics of [the] relevant listed

impairment." *Tackett*, 180 F.3d at 1099, quoting 20 C.F.R. § 404.1526.

Plaintiff argues she has "severe degenerative joint disease of the left hip as well as

degenerative changes in the left knee," and notes the ALJ concluded these were severe impairments.

(Doc. 13 at 6, 8).  Plaintiff notes "Dr. Wu (sic) was of the opinion that [Plaintiff] was limited to a

range of sedentary work, but would require a cane for long distance ambulation.  The state agency

reviewing physician [Dr. Spitzer] concurred, but also opined that [Plaintiff] should *avoid uneven*

*terrain.*" (*Id.* at 7) (emphasis in original).  According to Plaintiff, the ALJ's determination is not

supported by substantial evidence "[b]ecause a reasonable person would disagree with the ALJ in

light of the numerous positive physical findings." *Id.* at 8.  Plaintiff contends, "[T]he physical

findings do reflect that [her] severe lower extremity impairment meets Listing 1.02A." *Id.* at 9.

Defendant asserts substantial evidence supports the ALJ's finding that Plaintiff's

impairments did not meet or medically equal Listing 1.02.  (Doc. 15 at 7).  According to Defendant,

Dr. Spitzer did not specify how far Plaintiff could walk on uneven terrain, or whether the limitation

"only applied to walking over uneven terrain without the use of [a] cane." *Id.* at 7.  Defendant argues

the medical evidence "supports the conclusion that Plaintiff did not have 'an *extreme* limitation of

the ability to walk.'" *Id.* at 8, quoting Listing 1.02(B)(2)(b)(1) (emphasis added).

Importantly, ineffective ambulation requires "the use of a hand-held assistive device *that*

*limits the functioning of both upper extremities*." Listing 1.00(B)(2)(b) (emphasis added).  Plaintiff

fails to address this Listing requirement, but acknowledges no physician found she met a Listing.

(Doc. 13 at 9).  Dr. Spitzer specified Plaintiff should "[a]void uneven terrain," and that she required

use of a cane for distances greater than six blocks. AR at 325.  Also, Dr. Spitzer "adopted" the

findings of Dr. Yu, who opined Plaintiff "should be able to walk short distances about the house

without an assistive device." *Id.* at 323, 328.  Although he gave "more weight" to opinion of Dr.

Yu, the ALJ included a limitation to "use of an assistive device to walk more than 6 blocks" in the

RFC.[2]  *Id.* at 17, 19.  Both Dr. Spitzer and Dr. Yu opined Plaintiff had the ability to walk beyond six blocks with the use of a cane, and these medical opinions are substantial evidence in support of the finding that Plaintiff's impairments did not meet or medically equal Listing 1.02.  Moreover, by her own testimony, Plaintiff exhibits an ability to ambulate effectively, because she testified that she drove her children to school each day.  AR at 28; *see also* Listing 1.00(B)(2)(b) ("To ambulate effectively, individuals must . . . have the ability to travel without companion assistance to and from a place of employment or school).  Therefore, Plaintiff's assertion that her impairments meet or are medically equal to Listing 1.02 is unavailing, because the impairments do not result in an "inability to ambulate effectively."

B.   The ALJ set forth clear and convincing reasons to discount Plaintiff's credibility.

The ALJ found Plaintiff's "medically determinable impairments can reasonably be expected to produce her alleged symptoms."  AR at 19.  The ALJ determined also that "her statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible."  *Id.* at 19-20.  Therefore, the ALJ gave Plaintiff's subjective complaints "some weight."  *Id.* at 20.  Plaintiff asserts the ALJ "failed to set forth legally sufficient reasons for rejecting her subjective complaints." (Doc. 13 at 9).

In determining credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007), quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991).  An adverse finding of credibility must be based on clear and convincing evidence where there is no affirmative evidence of a claimant's malingering and "the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains."  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

---

[2] An examining physician's opinion is given more weight than the opinion of a non-examining physician. 20 C.F.R. § 404.1527(d)(2). Therefore, the opinion of Dr. Yu was entitled to more weight than the opinion of Dr. Spitzer.

1   Factors that an ALJ may consider in a credibility determination include, but are not limited

2   to: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between

3   testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately

4   explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony of

5   physicians concerning the nature, severity, and effect of the symptoms.  *Fair v. Bowen*, 885 F.2d

6   597, 603 (9th Cir. 1989); *see also Thomas v Barnhart*, 287 F.3d 947, 958-59 (9th Cir. 2002).

7   Credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ

8   rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the

9   claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).  Here, the ALJ

10  considered the objective medical evidence, the treatment Plaintiff received, her daily activities, and

11  inconsistent statements.  AR at 18, 20.

12       *Objective medical evidence and treatment*

13  Generally, "conflicts between a [claimant's] testimony of subjective complaints and the

14  objective medical evidence in the record" can constitute "specific and substantial reasons that

15  undermine . . . credibility."  *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir.

16  1999).  The Ninth Circuit stated, "While subjective pain testimony cannot be rejected on the sole

17  ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a

18  relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins v.*

19  *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th

20  Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain

21  testimony, it is a factor that the ALJ can consider in his credibility analysis.").  Here, the ALJ did not

22  base his decision solely on the fact that the medical record did not support the degree of symptoms

23  alleged by Plaintiff.  Thus, the objective medical evidence was a relevant factor in determining

24  Plaintiff's credibility.

25  The ALJ summarized the medical findings regarding Plaintiff's rheumatoid arthritis and

26  "history of pain to her back, left knee, and left hip."  AR at 18-19.  The ALJ noted Plaintiff "has had

27  very little treatment for her impairments since the alleged onset date."  *Id.* at 18.  This is a valid

28  consideration by the ALJ, who may determine a claimant's statements are "less credible if the level

14

or frequency of treatment is inconsistent with the level of complaints." SSR 96-7p, 1996 SSR LEXIS 4, at *21; *see also Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (minimal treatment may suggest a lower level of pain and functional limitations than a claimant alleges); *Fair*, 885 F.2d at 603 ("unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of the claimant's pain testimony").

### Activities of daily living

A claimant's ability to cook, clean, do laundry and manage finances is sufficient to support an adverse finding find of credibility.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *see also Burch*, 400 F.3d at 680 (the claimant's activities "suggest she is quite functional. She is able to care for her own personal needs, cook, clean and shop.  She interacts with her nephew and boyfriend. She is able to manage her own finances…").  The Ninth Circuit found the ability to "take care of . . . personal needs, prepare easy meals, do light housework, and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity." *Curry v. Sullivan*, 925 F.2d 1125, 1130 (9th Cir. 1990).

In this case, the ALJ considered Plaintiff's "many activities of daily living" as part of the credibility determination.  AR at 20.  Plaintiff reported that she cared for her children, cleaned, cooked, and did grocery shopping.  *Id.*  Although Plaintiff's complaints warrant a finding of less-than-sedentary work, her daily activities were comparable to those of claimants in *Curry* and *Burch*, and are inconsistent with claims of completely disabling impairments.  Consequently, Plaintiff's activities of daily living were clear and convincing evidence to discount her credibility.

### Inconsistent statements

An ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid."  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Here, the ALJ noted Plaintiff's inconsistent statements regarding side effects from her medication.[3] AR at 20.  The ALJ observed that Plaintiff "said she gets side effects from the medications which

---

[3] Notably, in assessing Plaintiff's credibility, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication."  20 C.F.R. § 404.1529(c).

1    make her very sleepy, but this claim is not supported by the medical evidence of record, and is

2    contradicted by Dr. Bernstein's report." *Id.* Dr. Bernstein noted Plaintiff had no side effects to the

3    medication on January 1, 2010. *See id.* at 380. Plaintiff's lack of candor was a valid consideration

4    by the ALJ. *Smolen*, 80 F.3d at 1284; *Fair*, 885 F.2d at 604 n.5.

5         Given the above factors, the ALJ set forth "a credibility determination with findings

6    sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the]

7    claimant's testimony." *Thomas*, 278 F.3d at 958. Therefore, the ALJ did not improperly discount

8    the credibility of Plaintiff's subjective complaints.

9                                    **CONCLUSION**

10        For all these reasons, the ALJ's conclusion that Plaintiff was not disabled was based upon

11   proper legal standards and is supported by substantial evidence. The step-three determination that

12   Plaintiff's impairments did not meet or medically equal Listing 1.02 was supported by substantial

13   evidence. In addition, the ALJ set forth clear and convincing reasons to discount Plaintiff's

14   credibility. Therefore, the ALJ's determination of the evidence must be upheld. *See Burch*, 400

15   F.3d at 679 (even where "evidence is susceptible to more than one rational interpretation, it is the

16   ALJ's conclusion that must be upheld.").

17        Accordingly, **IT IS HEREBY ORDERED**:

18        1.    Plaintiff's appeal from the administrative decision of the Commissioner of Social

19              Security is **DENIED**; and

20        2.    The Clerk of Court IS DIRECTED to enter judgment in favor of Defendant Michael J.

21              Astrue, Commissioner of Social Security, and against Plaintiff Maria Reyes.

22   IT IS SO ORDERED.

23   Dated:   **November 1, 2011**                                      **/s/ Jennifer L. Thurston**
                                                           UNITED STATES MAGISTRATE JUDGE
24

25

26

27

28

                                              16